DAVON MILLER,
    *Plaintiff*,

v.

MANN, *et al.*,
    *Defendants*.

No. 3:17-cv-01555 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Davon Miller is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. After an initial review, the Court concludes that the amended complaint shall be allowed to proceed in part as to some of plaintiff's claims against some of the defendants.

## BACKGROUND

Plaintiff names seven defendants: Correctional Officer Mann, Lieutenant Squires, Lieutenant Cavagnoff, Lieutenant Beebe, Deputy Warden Roach, Medical Administrator Lightner, and Captain Rivera. The following allegations from plaintiff's amended complaint are accepted as true for purposes of the Court's review.

On August 17, 2017, plaintiff was an unsentenced detainee at the MacDougall Correctional Institution ("MacDougall"). Cavagnoff instructed Mann to place plaintiff in a segregation cell with a sentenced inmate who had a history of violence and mental illness. Because the inmate wanted a single cell, he assaulted his cellmates. Staff at MacDougall were aware of this behavior. Doc. #1 at 5 (¶ 1). When plaintiff entered the cell, he went to use the toilet. His cellmate assaulted him, repeatedly smashing plaintiff's head against the steel toilet until plaintiff became unconscious. *Id.* (¶ 2).

As plaintiff began to regain consciousness, Mann opened the cell door and sprayed a chemical agent (mace) into plaintiff's face and open wound. *Id.* (¶ 3). Plaintiff again lost consciousness. When he awoke, a nurse was stitching his wound. His boxers were off, and his face and body were burning from the chemical agent. *Id.* (¶ 4).

Plaintiff was admitted to the infirmary. He had suffered two black eyes, six stitches under his right eye, a blood clot in his right eye, a bone fracture in his right eye socket, a swollen jaw and a cut in his right eye. *Id.* at 6 (¶ 5). Plaintiff was not taken to the hospital or given a bottom bunk pass. He was not given a tetanus shot or a CAT scan. He was given a Motrin tablet at the end of the day. The following day, he was transferred to the Walker Correctional Institution segregation unit. *Id.* (¶ 6).

Plaintiff asked Squires and Beebe if he could press charges. They told him no, that he should have done so on the day of the incident. Beebe also told plaintiff that calling the state police is a privilege and that he was refusing to let plaintiff call or make an incident report. *Id.* (¶¶ 7-8).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). To be sure, "*pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723

F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants). Still, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

*Administrative Exhaustion*

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 740–41 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).[1]

An inmate's failure to exhaust administrative remedies is excusable if the remedies are in fact unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative remedy procedure is unavailable when it operates as a simple dead end, with officers unable or

---

[1] The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Administrative Remedies, and may be found at: http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf (effective August 15, 2013).

consistently unwilling to provide any relief to aggrieved inmates. *Id*. at 1859. Unavailability may also be found where an administrative scheme is so opaque that it becomes incapable of use. *Ibid*. Finally, a grievance process is rendered unavailable if prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation. *Id*. at 1860. *See also Sango v. VanWagner*, 2017 WL 674035 (W.D. Mich.) (inmate's administrative remedies were unavailable where a grievance was returned with "let it go, or die" written on it), *report and recommendation approved*, 2017 WL 661505 (W.D. Mich. 2017).

Plaintiff's initial complaint did not allege that he exhausted his administrative remedies before filing this action. Plaintiff did however allege that he was transferred to a different correctional facility within a day of the incident, seemingly immediately upon his release from the infirmary. Doc. #8 at 6 (¶ 6). He further alleged that Lieutenants Squires and Beebe prevented him from "press[ing] charges," *id*. (¶ 7), and that Lieutenant Beebe told him it was "a privilege to make a call to the Connecticut state police" and refused to let him "call or make a[n] incident report." *Id*. (¶¶ 7-8). Additionally, plaintiff's response to this Court's order to show cause (Doc. #9) alleges that plaintiff has made numerous attempts to pursue his administrative remedies within the prison and has been rebuffed. *See* Doc. #12 at 1. Plaintiff has also submitted a number of forms he submitted in his efforts to pursue the matter internally, *id*. at 2–7. Several of these forms were returned to plaintiff with an explanation of why he would not be granted relief. *Id*. at 2, 6.

The record is not clear enough at this time for me to conclude that plaintiff has failed without excuse to exhaust his administrative remedies. It is possible to read the evidence as suggesting that plaintiff successfully filed a Level 1 grievance, which was rejected, and now has (or had) the opportunity to file a Level 2 grievance challenging that rejection. It is clear,

however, that plaintiff has attempted to utilize the prison grievance system; indeed, it appears that he has filed more grievance forms than were required. And some of plaintiff's allegations, *e.g.*, that prison officials have told him that there was "no relief to be granted," *id*. at 1, do raise a plausible inference that he is not being permitted to pursue those internal remedies, or that the prison officials have already made up their minds to deny him relief. Accordingly, on this record and at this early stage I decline to hold that plaintiff has failed to exhaust his administrative remedies. This conclusion is of course without prejudice to defendants' right to argue, in a motion to dismiss or other appropriate forum, that plaintiff's administrative remedies were not in fact made unavailable to him, and that he failed to exhaust those remedies. Because I will not dismiss the complaint at this stage for failure to exhaust administrative remedies, I will turn now to an initial review pursuant to 28 U.S.C. § 1915A of the legal sufficiency of plaintiff's claims.

### *Deliberate Indifference to Safety*

Plaintiff alleges that Mann and Cavagnoff were deliberately indifferent to his safety when they placed him in the same cell with a violent inmate. A pretrial detainee has a Due Process right to be free from intentional or deliberately indifferent acts by prison authorities that expose the detainee to violence by other inmates. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-71 (9th Cir. 2016) (*en banc*).

Here, plaintiff alleges that he was placed in a cell with an inmate with a history of violence and mental health problems, and who was generally known to beat up his cellmates in an effort to obtain a single cell. Doc. #1 at 6 (¶ 1). Plaintiff also alleges that "MacDougall is aware of" his cellmate's violent tendencies, including that he had beaten up previous cellmates. *Ibid*. Construed liberally, these factual allegations state a plausible claim both that plaintiff's placement in a cell with this other prisoner posed a substantial risk of serious harm and that both

5

defendant Mann, who placed him in that cell, and defendant Cavagnoff, who instructed Mann to do so, knew how dangerous his new cellmate was. Not only does it appear that neither Cavagnoff nor Mann did anything to abate the harm, of course, plaintiff alleges that Mann went on to assault him as well after his cellmate had beaten him unconscious. Thus, plaintiff has stated a valid claim for intentional or deliberate indifference to safety in violation of the Due Process Clause against both Cavagnoff and Mann.

### *Excessive Force*

Plaintiff has clearly stated a valid claim for use of excessive force against defendant Mann. The use of excessive force against a pre-trial detainee like plaintiff may constitute a denial of the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Here plaintiff alleges facts that—if true—plausibly show that defendant Mann intentionally injured him with a chemical agent without reason or justification. This states a plausible claim for relief for the use of excessive force in violation of the Fourteenth Amendment's Due Process Clause.

### *Right to Call State Police, Press Criminal Charges, and File Grievance*

Plaintiff alleges that Squires and Beebe told him that he could not call the state police or press charges. Doc. #1 at 7 (¶¶ 7–8). The Constitution does not create a right to have the police investigate or prosecute a crime. *See Bourguignon v. Lantz*, 2006 WL 214009, at *7 (D. Conn. 2006) (collecting cases). Nor is there any constitutional right to press criminal charges or to a criminal investigation by the relevant government officials. *See Johnson v. Ruiz*, 2012 WL 90159, at *4-5 (D. Conn. 2012).

Plaintiff further alleges that Beebe refused to let him make an incident report. The First Amendment protects the right of a prisoner to file a grievance. *See Franco v. Kelly*, 854 F.2d

6

584, 589 (2d Cir. 1988); *see also Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543-46 (4th Cir. 2017) (extensive discussion of a prisoner's clearly established right to file grievances). Accordingly, I will allow plaintiff's claim to proceed against Beebe insofar as plaintiff alleges that Beebe prevented him from filing a grievance to protest his alleged mistreatment.

### *Supervisory Officials*

The remaining defendants do not appear in the complaint's factual narrative in any personal capacity. Rather, plaintiff simply states that "it is Captain Rivera's responsibility to administrate what goes on in seg and he failed to do so," Doc. #1 at 7 (¶ 9), and the complaint does not mention defendants Roach or Lightner at all. It seems likely that Roach, the deputy warden, and Lightner, the medical administrator, are also being sued in their capacity as supervisory officials. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (noting that "liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant"). Moreover, conclusory, non-specific allegations of misconduct or gross negligence are insufficient to establish liability of supervisory prison officials under § 1983. *See Parris v. New York State Dep't of Correctional Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013).

Accordingly, the Court will dismiss plaintiff's claims against defendants Rivera, Roach, and Lightner without prejudice to re-pleading if plaintiff is able to allege facts to show that any of these supervisory personnel were personally involved with any deprivation of his rights. It

may be that plaintiff has a claim for deliberate indifference to his medical needs, as he states that he was never taken to the infirmary, never given a CAT scan, and never given a tetanus shot, but only given Motrin. But plaintiff does not identify any individual person who was personally involved with this denial of medical care. Accordingly, the Court will dismiss defendants Rivera, Roach, and Lighter as defendants in this case.

## CONCLUSION

The Court enters the following orders:

(1)     Plaintiff's claims against defendants Squires, Rivera, Roach, and Lightner are DISMISSED.

(2)     Plaintiff's claims against defendants Mann and Cavagnoff for intentional or deliberate indifference to safety and against Mann for excessive use of force in violation of the Fourteenth Amendment Due Process Clause shall proceed. Plaintiff's claim against Beebe for preventing him from filing a grievance in violation of the First Amendment shall proceed.

(3)     **Within twenty-one (21) days** of this Order, the Clerk shall mail waiver of service of process request packets to defendants Mann, Cavagnoff, and Beebe in their individual and official capacities at MacDougall-Walker Correctional Institution, 1153 East Street South, Suffield, CT 06080. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of

summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

(7) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or the attorney for defendants of his new address.

It is so ordered.

Dated at New Haven, Connecticut this 28th day day of December, 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge